**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-cv-22026-BLOOM/Elfenbein**

MANUEL A. PEREZ VELAZCO,

     Plaintiff,

v.

MARKWAYNE MULLIN, Secretary, U.S. Department
of Homeland Security (DHS); JOSEPH B. EDLOW,
Director, U.S. Citizenship and Immigration Services
(USCIS); TODD M. LYONS, Acting Director, U.S.
Immigration and Customs Enforcement (ICE);
RODNEY S. SCOTT, Commissioner, U.S. Customs and
Border Protection (CBP); MATTHEW S. DAVIES,
Executive Director of Admissibility and Passenger
Programs, U.S. Customs and Border Protection (CBP);
JOHN A. CONDON, Acting Executive Associate
Director, Homeland Security Investigations (HSI), U.S.
Immigration and Customs Enforcement (ICE),

     Defendants.

_____/

<u>**OMBINUS ORDER ON MOTION TO DISMISS**</u>

**THIS CAUSE** is before the Court upon Defendants' Motion to Dismiss Complaint for

Mandamus, APA Judicial Review, and Declaratory Relief ("Motion"), ECF No. [7]. Plaintiff filed

a Response in Opposition, ECF No. [12], to which Defendants filed a Reply, ECF No. [13]. The

Court has reviewed the Motion, the supporting and opposing submissions, the record, and is

otherwise fully advised. For the reasons that follow, the Motion is denied.

**I.**     **BACKGROUND**

**A. Statutory and Regulatory Framework**

The Cuban Refugee Adjustment Act of 1966, Pub. L. No. 89–732, 80 Stat. 1161 (1966)

("CRAA"), allows Cuban natives or citizens living in the United States who meet certain eligibility

requirements to apply to become lawful permanent residents. The CRAA provides that a native of Cuba who has (i) been inspected and admitted *or paroled* into the United States after January 1, 1959; and (ii) has been physically present in the country for at least one year, may apply to have his or her status adjusted to that of a lawful permanent resident, subject to the discretion of the Attorney General. *Id*. § 1 (emphasis added).

Until 2017, the United States applied what was referred to as the "wet-foot/dry-foot" policy to Cuban nationals. U.S. DEP'T OF HOMELAND SECURITY, *Fact Sheet: Changes to Parole and Expedited Removal Policies Affecting Cuban National*s, https://www.dhs.gov/publication/changes-parole-and-expedited-removal-policies-affecting-cuban-nationals (last accessed June 17, 2026). Pursuant to this policy, Cuban migrants traveling to the United States who were intercepted at sea ('wet foot') were returned to Cuba or resettled in a third country, while those who made it to U.S. soil ('dry foot') were able to "request parole." *Id*. But in 2017, the Department of Homeland Security ("DHS") rescinded that policy, opting to "consider any requests for such parole in the same manner as parole requests filed by nationals of other countries." *Id*.

Under this more standard system, detention of foreign nationals primarily operates under two statutory provisions—8 U.S.C. § 1225 and 8 U.S.C. § 1226. As relevant here, § 1225(a)(1) provides that an alien "present in the United States who has not been admitted . . . shall be deemed for purposes of this chapter an applicant for admission." Applicants for admission—i.e., those "seeking entry into the United States"—are subject to mandatory detention under § 1225(b)(1) and § 1225(b)(2). *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). Nationals detained pursuant to § 1225(b) can only be released via humanitarian parole under 8 U.S.C. § 1182(d)(5)(A), which

provides that the Secretary of Homeland security "may . . . in his discretion parole" an individual "for urgent humanitarian reasons or significant public benefit."

By contrast, § 1226(a) covers detention of those aliens who are already present in the country. *Fidencio Alvarez v. Warden, Federal Detention Center Miami, et al*, Case No. 25-14065, at 56 (11th Cir. May 6, 2026). In other words, there is a "border-interior distinction" between the application of § 1225 and § 1226. *Id*. Aliens subject to § 1226 are generally eligible for release on bond or "conditional parole." 8 U.S.C. § 1226(a).

The upshot is that those Cuban nationals released under § 1226(a), since they have not been admitted or paroled into the country, are not eligible for adjustment of status pursuant to the CRAA. By contrast, Cuban nationals released on parole after being detained under § 1225(b) *are* eligible for the benefits provided by the CRAA.

## B.  Factual Background

Plaintiff is a native and citizen of Cuba. ECF No. [1] ¶ 11. He arrived in the United States on or about April 1, 2019 and was detained by a Border Patrol Agent that same day. *Id.* ¶ 19.  On April 7, 2019, Petitioner was issued a Notice and Order of Expedited Removal pursuant to 8 U.S.C. § 1225(b)(1), charging Petitioner with inadmissibility under 8 U.S.C. 1182(a)(7)(A)(i)(I). ECF No. [7] at 2. On May 15, 2019, Plaintiff was issued a *post hoc* Form I-200, Warrant for Arrest of Alien. ECF No. [1] ¶ 20. On May 9, 2019, DHS issued and served Plaintiff with Form I-862, Notice to Appear. *Id.* ¶ 21. On October 15, 2019, DHS issued and served Plaintiff with Immigration and Customs Enforcement ("ICE") Form I-351, Immigration Bond, pursuant to § 1226. *Id.* ¶ 22.

On March 25, 2026, Plaintiff filed the instant action, seeking a writ of mandamus pursuant to 28 U.S.C. §§ 1361, 1651 compelling Defendants to grant Plaintiff humanitarian parole (Count I), APA judicial review pursuant to 5 U.S.C. § 702 *et seq.* for agency action that is contrary to law

(Count II), APA judicial review pursuant to 5 U.S.C. § 702 *et seq.* for agency action taken without observance of procedure required by law (Count III), and APA judicial review pursuant to 5 U.S.C. § 702 *et seq.* for unreasonable agency delay (Count IV). ECF No. [1].

On April 20, 2026, Defendants filed the instant Motion, arguing that the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1), as the Court lacks jurisdiction over Plaintiff's claims. ECF No. [7] at 1. Plaintiff responds that none of the provisions cited by Defendants actually preclude judicial review of his claims. ECF No. [12]. Defendants reply that judicial estoppel and the requirements of administrative exhaustion apply to bar the claims. ECF No. [13].

## II.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(1) challenges the district court's subject-matter jurisdiction and takes one of two forms: a "facial attack" or a "factual attack." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence*, 919 F.2d at 1529). "'Factual attacks,' on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *Id.* (quotation marks omitted); *see also Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008) ("[A] factual attack on a complaint challenges the existence of

subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony.") (citation omitted)).

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citing *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 11 (1799) and *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-183 (1936)). Once a federal court determines that it is without subject matter jurisdiction, "the court is powerless to continue." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974-75 (S.D. Fla. 2023); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

"A district court can hear a case only if it has at least one of three types of subject matter jurisdiction: (1) jurisdiction under specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Hensley v. Hartford Cas. Ins. Co.*, 113 F.4th 1327, 1332 (11th Cir. 2024) (quoting *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 849 F.3d 1313, 1317 (11th Cir. 2017) (internal quotations omitted)). With regard to federal question jurisdiction, the district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C § 1331; *see Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002) ("federal jurisdiction generally exists 'only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'") (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

### III.    DISCUSSION

#### A.  8 U.S.C. § 1226(e)

Defendants first argue that 8 U.S.C. § 1226(e) strips the Court of jurisdiction over the case. ECF No. [7] at 7. They argue that an immigration judge's decision to release Plaintiff from detention with a bond under § 1226(a)(2)(A), instead of a humanitarian parole under § 1182(d)(5)(A), is a discretionary decision and therefore unreviewable. *Id.* at 7–8.

Plaintiff responds that § 1226(e) does not bar Plaintiff's claims because Plaintiff was never properly subject to § 1226 in the first place. ECF No. [12] at 4. Because § 1226(e) is tied to actions taken under § 1226, it cannot strip jurisdiction over a claim that § 1226 was never the proper statutory authority to begin with. *Id.* at 5. "The question whether § 1225 or § 1226 supplied the governing authority is antecedent to anything § 1226(e) purports to insulate; until that legal question is answered in Defendants' favor, § 1226(e) is not even in play." *Id.*[1]

Section 1226(e) provides as follows:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

The Supreme Court has explained that § 1226(e) precludes an alien from "challeng[ing] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release." *Demore v. Kim*, 538 U.S. 510, 516 (2003). However, §

---

[1] For reasons unknown to the Court, Defendants do not respond to any of Plaintiff's jurisdictional arguments in their Reply. Instead, they raise new arguments unrelated to jurisdiction, including judicial estoppel and failure to exhaust administrative remedies. But these issues are not logical extensions of Defendants' subject matter jurisdiction arguments; they are entirely new issues, which cannot be raised for the first time in a reply brief. *See, e.g.*, *United States v. Oakley*, 744 F.2d 1553, 1556 (11th Cir. 1984) ("Arguments raised for the first time in a reply brief are not properly before the reviewing court."); *United States v. Whitesell*, 314 F.3d 1251, 1256 (11th Cir. 2002) (per curiam) (Court need not address issue raised for first time in reply brief); *United States v. Dicter*, 198 F.3d 1284, 1289 (11th Cir. 1999) (issue raised for first time in reply brief was waived). As such, the Court does not consider these arguments.

1226(e) does not preclude "challenges [to] the statutory framework that permits [the alien's] detention without bail." *Id.* at 517. That is, "§ 1226(e) does not apply to suits challenging the framework for decisions rather than a discretionary decision itself made under 8 U.S.C. § 1226." *Id.* at 516–17.

Though the Eleventh Circuit has not described in any detail the bounds of § 1226(e), other circuits have provided instructive interpretations. The Fourth Circuit has described § 1226(e) as stripping jurisdiction when a plaintiff is "challenging how the agency exercised its discretion." *Moore v. Frazier*, 941 F.3d 717, 724 n.6 (4th Cir. 2019). In another case, the Fourth Circuit explained that, in enacting § 1226(e), "Congress sought to forbid review of the Attorney General's actions and decisions in individual proceedings." *Miranda v. Garland*, 34 F.4th 338, 353 (4th Cir. 2022). The Ninth Circuit has explained that while § 1226(e) precludes review of an immigration judge's "discretionary bond determination," it does not preclude review of an "error of law in [a plaintiff's] agency proceedings." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022). The Ninth Circuit similarly explained that 1226(e) does not limit jurisdiction over the application of law to undisputed facts. *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) (quoting *Ramadan v. Gonzales*, 479 F.3d 646, 648 (9th Cir. 2007)). In *Hernandez-Lara v. Lyons*, the First Circuit found that it had jurisdiction to consider a challenge to "ICE's determination that [the petitioner] was subject to mandatory detention under section 1226(c)," rather than § 1226(a). 10 F.4th 19, 33 (1st Cir. 2021). In *Gonzalez v. O'Connell*, the Seventh Circuit that the Attorney General's decision that an individual properly falls within § 1226(c)'s ambit is not "within § 1226(e)'s ban on review." 355 F.3d 1010, 1015 (7th Cir. 2004). And the Fifth Circuit has contemplated a district court making the determination of whether an alien is properly detained under § 1226(c) or § 1226(a),

notwithstanding § 1226(e) and the Government's assertion of its view of the proper detention authority. *Oyelude v. Chertoff*, 125 F. App'x 543, 547 (5th Cir. 2005).

By contrast, in a different case, the Fifth Circuit rejected a party's argument that the Attorney General's actions should properly be analyzed under § 1225(b)(2) rather than the Government's asserted § 1226(a). *Loa-Herrera v. Trominski*, 231 F.3d 984, 991 (5th Cir. 2000). The Court found such a question within the Attorney General's "discretionary judgment" and therefore beyond the reach of judicial review. *Id.*

With all of this under consideration, the Court finds that it has jurisdiction to consider Plaintiff's claim. At first blush, § 1226(e) would appear to preclude the claims here, as Plaintiff essentially challenges whether § 1226(a) could appropriately be applied to him. However, what *Jennings*, *Demore*, and subsequent circuit court interpretations make clear is that there is a subtle distinction embedded in § 1226(e) between those individualized, discretionary determinations made by the Attorney General and broader challenges to the Attorney General's authority under the statutory scheme, with the latter giving rise to cognizable claims. So the relevant question here is where purely legal issues with the statutory framework end and the Attorney General's discretion begins.

And the applicability of § 1225 or § 1226 is not a matter of discretion—it does not involve weighing of any factors or assessing evidence. It is contingent on a simple question—whether an individual was detained without a warrant at or near or border (rendering § 1225 applicable) or, by contrast, whether the individual was detained "[o]n a warrant issued by the Attorney General" in the interior of the country (rendering § 1226 applicable). See *Fidencio Alvarez*, Case No. 25-14065, at 5; 8 U.S.C. § 1226(a). Thus, this purely legal question of how the statutory framework is meant to operate—that is, which classes of individuals are meant to be encompassed by which

8

provision—falls squarely within the range of questions that courts are empowered to answer. It certainly does not fall within the ambit of the "discretionary judgments" contemplated by § 1226 to be made by the Attorney General.

Thus, the Court finds that § 1226(e) does not strip its jurisdiction over Plaintiff's claims, as Plaintiff essentially challenge whether the Attorney General can apply § 1226(a) to those detained at or near a border without a warrant leading to their arrest or whether § 1225(b) is the only provision that may apply.

### B. 8 U.S.C. § 1252(a)(2)(B)(ii)

Defendants next argue that § 1252(a)(2)(B)(ii) precludes review here, because it bars review of discretionary decision by the Attorney General, and the decision "whether to order the Plaintiff released pursuant to § 1226(a)" is one such discretionary decision. ECF No. [7] at 8. Furthermore, Defendants argue that § 1252(a)(2)(B)(ii) bars judicial review of "DHS's *discretionary decision and action* to parole an[] alien under § 1182(d)(5)(A)." *Id.* at 9 (emphasis in original). Thus, the Court cannot order Defendants to issue humanitarian parole, because it cannot "override DHS's discretionary determination." *Id.*

Plaintiff responds that "antecedent legal questions about which statute governs an agency's conduct" are not committed to executive discretion such that § 1252(a)(2)(B)(ii) would bar review. ECF No. [12] at 6. Similarly, § 1252(a)(2)(B)(ii) does not "immunize agency action that is *ultra vires* from the outset." *Id*. Plaintiff clarifies that he does not ask the Court to review DHS's case-by-case discretionary judgment whether "urgent humanitarian reasons or significant public benefit" warrant parole under § 1182(d)(5)(A). *Id.* at 7. He instead seeks a declaration that humanitarian parole was the only legally available vehicle for his release from § 1225(b) custody. *Id.* at 7.

Again, Defendants do not raise an apt reply regarding jurisdiction.

Section 1252(a)(2)(B)(ii) provides that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of [asylum]." In *Alonso-Escobar v. USCIS Field Office Director of Miami, Florida*, the Eleventh Circuit explained, "The Attorney General's decision to parole an alien into the United States is discretionary." 462 F. App'x 933, 935 (11th Cir. 2012).

The Court finds that § 1252(a)(2)(B)(ii) does not preclude judicial review of the proper statutory authority for Plaintiff's detention. As the Court stated above, the question of which statutory provision applies—§ 1225 or § 1226—is not a matter of discretion at all. Instead, this is a matter of a statutory prerequisite set by Congress before the Attorney General can detain an individual under a given provision. As such, the Court is empowered to declare which statutory provision applied to govern Plaintiff's detention.

The Court pauses to make one final note. The Court finds two issues with Plaintiff's Complaint which may prove problematic at a later point. First, there is no legal authority for the position that, if Plaintiff's release under § 1226 was unauthorized, it automatically converts into a release on humanitarian parole under § 1182(d)(5)(A). Humanitarian parole under requires a "case-by-case" analysis of whether "urgent humanitarian reasons or significant public benefit" exist to justify Plaintiff's release. 8 U.S.C. § 1182(d)(5)(A). This analysis is entirely separate from the bond analysis under § 1226(a), so there is no automatic translation between the two. Thus, if the Court ultimately finds based on the factual record that the Government lacked authority to release Plaintiff under § 2226, then the release was unauthorized, and the appropriate remedy "is not to

retroactively bestow a discretionary benefit [Plaintiff] never received. It is to return to the status quo ante—which, under § 1225(b), is mandatory detention." *Molina-Cantero v. Dep't of Homeland Sec.*, No. 2:25-CV-549-KCD-NPM, 2026 WL 83954, at \*3 (M.D. Fla. Jan. 12, 2026).

Second, and relatedly, if there is a return to that *status quo ante* position, the Court lacks jurisdiction to order the Government to issue humanitarian parole. That is plainly barred by § 1252(a)(2)(B)(ii) and the Eleventh Circuit's ruling in *Alonso-Escobar*. Thus, the Court is only jurisdictionally empowered to provide Plaintiff with—at most—two of the forms of relief he seeks. Specifically, assuming the facts ultimately support this conclusion, the Court can declare (i) that Defendants acted unlawfully by detaining Plaintiff under 8 U.S.C. § 1226 with the issuance of a post-hoc warrant and subsequently releasing him on bond pursuant to 8 U.S.C. § 1226 and (ii) that Plaintiff's arrest and detention should have been made under the authority given to DHS by 8 U.S.C. § 1225 and any release should have proceeded via a parole determination. The remainder of the relief sought by Plaintiff—which boils down to ordering Defendants to issue parole where such parole determinations were committed to executive discretion—appears at this juncture to be beyond the reach of the Court.

However, for purposes of a motion to dismiss, because the Court finds it has jurisdiction over some portion of the Complaint and is empowered to provide some portion of the relief sought by Plaintiff, the Court is satisfied that the case should be permitted to proceed. As such, the Court denies Defendant's Motion.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendants' Motion to Dismiss, **ECF No. [7]**, is **DENIED.**

2. Defendants shall file their Answer by **June 25, 2026**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 18, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record