**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-cv-22026-BLOOM/Elfenbein**

MANUEL A. PEREZ VELAZCO,

Plaintiff,

v.

MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security (DHS); JOSEPH B. EDLOW, Director, U.S. Citizenship and Immigration Services (USCIS); TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement (ICE); RODNEY S. SCOTT, Commissioner, U.S. Customs and Border Protection (CBP); MATTHEW S. DAVIES, Executive Director of Admissibility and Passenger Programs, U.S. Customs and Border Protection (CBP); JOHN A. CONDON, Acting Executive Associate Director, Homeland Security Investigations (HSI), U.S. Immigration and Customs Enforcement (ICE),

Defendants.
_____________________________/

**ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS**

**THIS CAUSE** is before the Court upon Defendants' Motion for Judgment on the Pleadings, ECF No. [21] ("Motion"). Plaintiff filed a Response in Opposition, ECF No. [24], to which Defendants filed a Reply, ECF No. [25]. The Court has considered the Motion, the supporting and opposing submissions, the record, and is otherwise fully advised. For the reasons that follow, the Motion is granted.

## I. BACKGROUND

### A. Statutory and Regulatory Framework

The Cuban Refugee Adjustment Act of 1966, Pub. L. No. 89–732, 80 Stat. 1161 (1966) ("CAA"), allows Cuban natives or citizens living in the United States who meet certain eligibility

requirements to apply to become lawful permanent residents. The CAA provides that a native of Cuba who has (i) been inspected and admitted *or paroled* into the United States after January 1, 1959; and (ii) has been physically present in the country for at least one year, may apply to have his or her status adjusted to that of a lawful permanent resident, subject to the discretion of the Attorney General. *Id.* § 1 (emphasis added).

Until 2017, the United States applied what was referred to as the "wet-foot/dry-foot" policy to Cuban nationals. U.S. DEP'T OF HOMELAND SECURITY, *Fact Sheet: Changes to Parole and Expedited Removal Policies Affecting Cuban Nationals*, https://www.dhs.gov/publication/changes-parole-and-expedited-removal-policies-affecting-cuban-nationals (last accessed June 17, 2026). Pursuant to this policy, Cuban migrants traveling to the United States who were intercepted at sea ('wet foot') were returned to Cuba or resettled in a third country, while those who made it to U.S. soil ('dry foot') were able to "request parole." *Id.* But in 2017, the Department of Homeland Security ("DHS") rescinded that policy, opting to "consider any requests for such parole in the same manner as parole requests filed by nationals of other countries." *Id.*

Under this more standard system, detention of foreign nationals primarily operates under two statutory provisions—8 U.S.C. § 1225 and 8 U.S.C. § 1226. As relevant here, § 1225(b)(1) provides that an alien "present in the United States who has not been admitted . . . shall be deemed for purposes of this chapter an applicant for admission." Applicants for admission—i.e., those "seeking entry into the United States"—are subject to mandatory detention under § 1225(b)(1) and § 1225(b)(2). *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). Nationals detained pursuant to § 1225(b) can only be released via humanitarian parole under 8 U.S.C. § 1182(d)(5)(A), which

provides that the Secretary of Homeland security "may . . . in his discretion parole" an individual "for urgent humanitarian reasons or significant public benefit."

By contrast, § 1226(a) covers detention of those aliens who are already present in the country. *Fidencio Alvarez v. Warden, Federal Detention Center Miami, et al*, Case No. 25-14065, at 56 (11th Cir. May 6, 2026). In other words, there is a "border-interior distinction" between the application of § 1225 and § 1226. *Id*. Aliens subject to § 1226 are generally eligible for release on bond or "conditional parole." 8 U.S.C. § 1226(a).

Relevant here, the result is that those Cuban nationals released under § 1226(a), since they have not been admitted or paroled into the country, are not eligible for adjustment of status pursuant to the CAA. By contrast, Cuban nationals released on parole after being detained under § 1225(b) *are* eligible for the benefits provided by the CAA.

**B. Factual Background**

Plaintiff is a native and citizen of Cuba. ECF No. [1] ¶ 11. He arrived in the United States on or about April 1, 2019 and was detained by a Border Patrol Agent that same day. *Id.* ¶ 19. On April 7, 2019, Petitioner was issued a Notice and Order of Expedited Removal pursuant to 8 U.S.C. § 1225(b)(1), charging Petitioner with inadmissibility under 8 U.S.C. 1182(a)(7)(A)(i)(I). ECF No. [7] at 2. On May 15, 2019, Plaintiff was issued a *post hoc* Form I-200, Warrant for Arrest of Alien. ECF No. [1] ¶ 20. On May 9, 2019, DHS issued and served Plaintiff with Form I-862, Notice to Appear. *Id.* ¶ 21. On October 15, 2019, DHS issued and served Plaintiff with Immigration and Customs Enforcement ("ICE") Form I-351, Immigration Bond, pursuant to § 1226. *Id.* ¶ 22.

On March 25, 2026, Plaintiff filed the instant action, seeking a writ of mandamus pursuant to 28 U.S.C. §§ 1361, 1651 compelling Defendants to grant Plaintiff humanitarian parole (Count I), APA judicial review pursuant to 5 U.S.C. § 702 *et seq.* for agency action that is contrary to law (Count II), APA judicial review pursuant to 5 U.S.C. § 702 *et seq.* for agency action taken without

observance of procedure required by law (Count III), and APA judicial review pursuant to 5 U.S.C. § 702 *et seq.* for unreasonable agency delay (Count IV). ECF No. [1].

On April 20, 2026, Defendants filed a Motion to Dismiss, arguing that the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1), as the Court lacked jurisdiction over Plaintiff's claims. ECF No. [7] at 1. Plaintiff responded that none of the provisions cited by Defendants actually precludes judicial review of his claims. ECF No. [12]. Defendants replied that judicial estoppel and the requirements of administrative exhaustion apply to bar the claims. ECF No. [13].

On June 18, 2026, the Court issued its Order denying the Motion to Dismiss ("Order on the Motion to Dismiss"), finding that Defendant's asserted jurisdictional bars did not apply. ECF No. [14]. However, in that Order, the Court cautioned Plaintiff that it could not provide him with most of the relief he seeks. *Id.* at 10–11. At most, the Court explained that it could declare "(i) that Defendants acted unlawfully by detaining Plaintiff under 8 U.S.C. § 1226 with the issuance of a post-hoc warrant and subsequently releasing him on bond pursuant to 8 U.S.C. § 1226 and (ii) that Plaintiff's arrest and detention should have been made under the authority given to DHS by 8 U.S.C. § 1225 and any release should have proceeded via a parole determination." *Id.* at 11. The Court could not order Defendants to issue parole. *Id.*

In August 2026, Defendants filed the instant Motion, arguing that multiple reasons counsel in favor of dismissing Plaintiff's Complaint. ECF No. [21]. The Motion is now fully briefed. *See* ECF Nos. [24] and [25].

## II. LEGAL STANDARD

"After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter

of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001); *see also Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014); *Palmer & Cay, Inc. v. Marsh & McLennan Cos.*, 404 F.3d 1297, 1303 (11th Cir. 2005); *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1291 (11th Cir. 2002). "A motion for judgment on the pleadings admits the [non-moving party's] factual allegations and impels the district court to reach a legal conclusion based on those facts." *Gachette v. Axis Surplus Ins. Co.*, No. 19-23680-CIV, 2020 WL 2850587, at *1 (S.D. Fla. Apr. 1, 2020) (quoting *Dozier v. Prof'l Found. for Heath Care, Inc.*, 944 F.2d 814, 816 (11th Cir. 1991)). "In determining whether a party is entitled to judgment on the pleadings, [courts] accept as true all material facts alleged in the non-moving party's pleading, and [ ] view those facts in the light most favorable to the non-moving party." *Perez*, 774 F.3d at 1335 (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)).

"A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *King v. Akima Glob. Servs., LLC*, 775 F. App'x 617, 620 (11th Cir. 2019). As such, a complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

## III. DISCUSSION

### A. Justiciability and Jurisdiction

The Court begins by addressing its jurisdiction, specifically as it relates to issues of justiciability. It is "well settled that a federal court is obligated to inquire into [its] subject matter jurisdiction *sua sponte*." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). If, upon such an inquiry, the Court finds subject matter jurisdiction lacking, the Court must dismiss the case. *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1240 (11th Cir. 2003) (explaining that federal courts have an obligation to dismiss an action *sua sponte* if subject matter jurisdiction is lacking). Moreover, if subject matter jurisdiction does not exist, "[t]he Court cannot consider the merits of a claim." *City of Pembroke Pines, Fla. v. Fed. Emergency Mgmt. Agency*, 494 F. Supp. 3d 1272, 1281 (S.D. Fla. 2020).

Article III of the Constitution limits the subject matter jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. "The principles of standing, ripeness and mootness derive from the Article III limits on the jurisdiction of federal courts." *Jackson v. Okaloosa Cnty., Fla.*, 21 F.3d 1531, 1536 (11th Cir. 1994) (citation omitted).[1]

The Court begins with standing. "To have a case or controversy, a litigant must establish that he has standing," which requires proof of three elements. *United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019). Specifically, the plaintiff must prove (1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must

[1] The issue of ripeness is not implicated here, so the Court does not address it.

allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Malowney v. Federal Collection Deposit Group*, 193 F.3d 1342, 1346 (11th Cir. 1999). "The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Id.* at 1347 (quoting *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985)). Thus, for plaintiffs to have standing, they "must assert a reasonable expectation that the injury they have suffered will continue or will be repeated in the future." *Id.*; *see also Keen v. Judicial Alternatives of Georgia*, Inc., 637 F. App'x 546, 548 (11th Cir. 2015) (affirming dismissal of putative class action seeking a declaratory judgment because plaintiff did not demonstrate "that he faced an actual, imminent injury that would confer standing[.]"). Specifically in the context of a plaintiff seeking declaratory relief, the plaintiff may establish redressability by showing that the "practical consequence" of the declaratory relief "would amount to a significant increase in the likelihood that the [Plaintiff] would obtain relief that directly redresses the injury suffered." *Utah v. Evans*, 536 U.S. 452, 464 (2002).

The doctrine of mootness is closely related. If the injury at issue in the case "ceases, or is rendered unamenable to judicial relief, then the case becomes moot and thereby incapable of further Article III adjudication." *Checker Cab Operators, Inc. v. Miami-Dade Cnty.*, 899 F.3d 908, 915 (11th Cir. 2018) (citation omitted). A case generally "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (internal quotation marks omitted).

But while mootness and standing are "closely related," *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 115 F.4th 1266, 1280 (11th Cir. 2024), *cert. denied*, 146 S. Ct.

607 (2025), they are nonetheless separate issues. "[T]he emphasis in standing problems is on whether the party invoking federal court jurisdiction has a personal stake in the outcome of the controversy and whether the dispute touches upon the legal relations of parties having adverse legal interests." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (citations and internal quotation marks omitted). Once a party has established standing, the claim he asserts must remain "live" throughout the pendency of the case—that is, it cannot become moot. *See Powell v. McCormack*, 395 U.S. 486, 496 (1969). But together, the standing and mootness doctrines can be articulated as follows: "The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000) (citation omitted). And both require that courts not "give advisory opinions which cannot affect the rights of the litigants in the case before it." *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emp. of Am., Div. 998 v. Wisconsin Emp. Rels. Bd.*, 340 U.S. 416, 418 (1951) (citation omitted).

In their Reply, Defendants raise the issue of the non-existence of a "case" or "controversy" here. Specifically, Defendants argue that any declaration from the Court would "amount to nothing more than a gratuitous pronouncement lacking any legal force or effect[.]" ECF No. [25] at 3. This is because the declaratory relief sought by Plaintiff "would not provide the practical relief necessary to accomplish his ultimate objective—obtaining parole status sufficient to satisfy the Cuban Adjustment Act." *Id.* The relief would "have no effect on the circumstances currently existing," making declaratory relief improper. *Id.* at 3–4.

The Court, concerned by the jurisdictional question raised but cognizant that Plaintiff had no opportunity to respond to such arguments, ordered Plaintiff to file a Sur-reply addressing this jurisdictional argument. ECF No. [26]. Plaintiff did so. ECF No. [31].

Specifically, Plaintiff argues that his case presents “a live dispute” with parties “holding adverse legal interests,” and “relief [] would make a concrete difference”—no more is required to establish a “case” or “controversy.” *Id.* at 1. Specifically, the parties hold “adverse legal positions about the legal basis of Plaintiff’s present release, not about a closed episode.” *Id.* at 3. The dispute, furthermore, has “present, concrete consequences,” as the outcome of this case could affect Plaintiff’s ongoing removal proceedings. *Id.* at 3–4. Moreover, the issue is not moot, as the challenged agency action “remains the operative legal basis for Plaintiff’s release[.]” *Id.* at 5. Finally, the requested relief would redress Plaintiff’s injury even though the ultimate parole decision is discretionary, as declarations from the Court “would change the legal status of Plaintiff’s release.” *Id.* at 6.

The Court finds that a live “case” or “controversy” exists here and that all justiciability elements are satisfied. This case first invokes the justiciability issue of standing, a prerequisite for subject matter jurisdiction. *See Mt. Hawley Ins. Co. v. H&M Builders, LLC*, 184 F.4th 1337, 1341 (11th Cir. 2026) (“The existence of a justiciable controversy is a jurisdictional requirement.” (citation omitted)). Thus, the Court analyzes the three prongs of the standing analysis.

There is little dispute that Plaintiff presents (1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant. *Lujan*, 504 U.S. at 560–61 (1992). He contends that Defendants improperly classified his detention and release as operating under the procedures of § 1226(a) rather than § 1225(b) and, as a result, he has been precluded from pursuing or attaining adjustment of status under the CAA.

Thus, the core question is whether Plaintiff’s injury is likely to be redressed by a favorable decision. *Id*. One core form of relief that Plaintiff seeks—a judgment ordering Defendants to issue Plaintiff a humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A), ECF No. [1] ¶ 87—is plainly

unavailable to him. Indeed, as the Court explained in its Order on Defendants' Motion to Dismiss, "the Court lacks jurisdiction to order the Government to issue humanitarian parole[,]" as such intervention is "barred by § 1252(a)(2)(B)(ii)[.]" ECF No. [14] at 10–11.

But Plaintiff also requests multiple forms of declaratory relief, two of which the Court identified as being potentially available. Specifically, Plaintiff requests that the Court:

> 85. Declare that Defendants have acted without observance of procedure required by law by detaining Plaintiff under 8 U.S.C. § 1226 with the issuance of a post-hoc warrant and subsequently releasing him on bond pursuant to section 236 of the INA, 8 U.S.C. § 1226.
> 86. Declare that Plaintiff's arrest and detention should have been made under the authority given to DHS by INA § 235, 8 U.S.C. § 1225. As a result, Plaintiff's subsequent release should have been effectuated with the issuance of a humanitarian parole under INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A).

ECF No. [1] ¶¶ 85, 86.

The Court explained that it could theoretically provide declaratory relief. ECF No. [14] at 11. However, the availability of these declaratory judgments depends in part on whether they would be of any practical import in the context of redressing Plaintiff's injuries—that is, whether the controversy between the parties is "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

The Court finds that such declaratory judgments would be sufficiently impactful to satisfy the standing requirement. The Court is guided by the Eleventh Circuit in *Labrada-Hechavarria v. U.S. Attorney General*, No. 23-13664, 2026 WL 496486, at *1 (11th Cir. Feb. 23, 2026). In *Labrada-Hechavarria*, an immigration judge ordered certain petitioners removed. *Id.* The immigration judge ruled that the petitioners were not eligible for adjustment of status under the CAA, because they were released on their own recognizance, which does not constitute a grant of parole that would permit such adjustment. *Id.* The Board of Immigration Appeals ("BIA") affirmed, concluding that the petitioners had been detained pursuant to 8 U.S.C. § 1226(a), had

been released on their own recognizance, and were therefore not eligible for adjustment of status under the CAA. *Id*. The Eleventh Circuit concluded that it had jurisdiction. *Id.* at *2. Specifically, it found that it had "jurisdiction to address the main legal question presented here—whether the petitioners were detained pursuant to § 1225(a) or § 1226(a)." *Id*. The Eleventh Circuit vacated the BIA's decision that the petitioner were detained pursuant to § 1226(a) and therefore ineligible for adjustment of status under the CAA, remanding the case to the BIA for further proceedings. *Id*.

Moreover, the Court finds guidance in Plaintiff's cited cases of *Utah v. Evans*, 536 U.S. 452 (2002), and *Federal Election Comm'n v. Akins*, 524 U.S. 11 (1998). In *Evans*, the Census Bureau used certain forms of "imputation" to fill in gaps in its population information and resolve certain conflicts in data. *Evans*, 536 U.S. at 457–58. As a result of this imputation, North Carolina's population was increased more than Utah's population, so North Carolina would receive one more Representative and Utah one less. *Id.* at 458. North Carolina argued that a court could not "redress" Utah's injury. *Id.* at 459–61. That is, the Court could order a recount, but it could not "reach" the "ultimate 'redress,'" which was reapportionment. *Id.* at 461. But Utah, the Supreme Court found, "reasonably believed" that recalculation would "as a practical matter, [] likely lead to a new, more favorable, apportionment of Representatives." *Id*. It therefore found standing satisfied, as it could "order[] a change in a legal status . . . , and the practical consequence of that change would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Id.* at 464.

Similarly, in *Federal Elections Commission v. Akins*, the Supreme Court held:

> [T]hose adversely affected by a discretionary agency decision generally have standing to complain that the agency based its decision upon an improper legal ground. If a reviewing court agrees that the agency misinterpreted the law, it will set aside the agency's action and remand the case—even though the agency (like a new jury after a mistrial) might later, in the exercise of its lawful discretion, reach the same result for a different reason. Thus respondents' "injury in fact" is "fairly

> traceable" to the FEC's decision not to issue its complaint, even though the FEC might reach the same result exercising its discretionary powers lawfully. For similar reasons, the courts in this case can "redress" respondents' "injury in fact."

524 U.S. 11, 25 (1998). Taken together, *Evans* and *Akins* support that declaratory relief satisfies the "redressability" element of standing, so long as it (i) substantially increases the likelihood that the ultimate relief sought will be attained; or (ii) would cause a decision to be remade on proper grounds.

Here, there would be a practical path forward were the Court to issue declaratory relief. It would require Defendants to reassess Plaintiff's release under the proper statutory framework and would meaningfully increase the likelihood that Plaintiff attains the ultimate relief sought, Plaintiff currently has no chance of obtaining adjustment of status under the CAA, and an analysis that his detention properly operated under § 1225(b) would at least afford him *some* increased probability of attaining parole and a subsequent adjustment of status. *See Georgia Atlas, Inc. v. Exec. Dir. of Georgia Access to Med. Cannabis Comm'n*, No. 22-11046, 2026 WL 2592884, at *5 (11th Cir. Sept. 2, 2026) ("[T]he removal of even one obstacle to the exercise of one's rights, even if other barriers remain, is sufficient to show redressability." (quoting *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 190 (4th Cir. 2018))).

As such, the Court does not find that the justiciability concerns raised in the Reply deprive the Court of jurisdiction here.[2] Accordingly, the Court turns to the specific arguments raised by Defendants in the Motion.

---

[2] The Court acknowledges that there exist several cases in which a challenge to the statutory basis for detention has been held mooted by a subsequent final order of removal. *See, e.g.*, *Farah v. U.S. Att'y Gen.*, 12 F.4th 1312, 1332 (11th Cir. 2021); *Vaupel v. Ortiz*, 244 F. App'x 892, 896 (10th Cir. 2007); *Kumar v. U.S. Dep't of Homeland Sec.*, No. 19-2404, 2020 WL 2904685, at *1 (6th Cir. June 1, 2020). But none of those cases arose with this very particular fact set—where the statutory basis for an earlier detention has knock-on consequences that remain live. And the Supreme Court recognizes that a case is not moot "[w]hen collateral effects of a dispute remain and continue to affect the relationship of litigants[.]" *Firefighters Loc. Union No. 1784 v. Stotts*, 467 U.S. 561, 585 (1984). Here, while Plaintiff's initial detention is over and thus

**B. Title 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g)**

Insofar as jurisdiction is a threshold question, the Court turns next to Defendants' argument that 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g) preclude the Court's exercise of jurisdiction. ECF No. [21] at 8. Fundamentally, Defendants contend that Plaintiff's Complaint indirectly attacks his removal order, and as such, § 1252 precludes jurisdiction. *Id.* at 8–11.

Plaintiff responds that he does not seek review of the removal order, and the Court should analyze the substance of his individual claims to determine if he seeks review of a removal order. ECF No. [24] at 9. Defendants' assertion that "a declaration might affect an issue discussed in removal proceedings does not, without more," bar the Court's exercise of jurisdiction. *Id.* at 10.

Relevant here, § 1252(a)(5) states that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered." It has been interpreted to mean that "final orders of removal may not be reviewed in district courts, even via habeas corpus, and may be reviewed only in the courts of appeals." *Nasrallah v. Barr*, 590 U.S. 573, 580 (2020). Even where one "characterize[es] his claim as a challenge not to his removal," but to some other immigration-related decision, § 1252(a)(5) may preclude review if, "in substance," the individual seeks review of his order of removal. *Mata v. Sec'y of Dep't of Homeland Sec.*, 426 F. App'x 698, 700 (11th Cir. 2011). Where one seeks to litigate "whether he was appropriately found removable" and any order from the district court would call into question "the very essence of the BIA's decision," § 1252(a)(5) strips jurisdiction. *Id.*

Section 1252(b)(9) states: "Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action

---

the question of its statutory basis is, in some sense, "moot," the Court find that the collateral consequences exception squarely applies.

taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." The Supreme Court has cautioned against "expansive interpretation[s]" of this provision that would lead to "staggering results." *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018). It has been understood to bar review where a plaintiff is "asking for review of an order of removal," "challenging the decision to detain them in the first place or to seek removal," or "challenging [a] part of the process by which their removability will be determined." *Id.* at 294. Though it is a "targeted" provision, *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) ("*Regents*"), it applies where a court ruling would "affect the validity of a previously issued order of removal or render that order non-final." *Riley v. Bondi*, 606 U.S. 259, 269 (2025).

Section § 1252(g) states, "Except as provided in this section . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." The Supreme Court has explained that this provision "applies only to three discrete actions that the Attorney General may take: her decision or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (internal quotation marks omitted) ("*AADC*"). It does not "refer[] to all claims arising from deportation proceedings," *id.*, nor does it "sweep in any claim that can technically be said to 'arise from' the three listed sections[.]" *Jennings*, 583 U.S. at 294. Instead, this "narrow" provision is "specifically directed at the deconstruction, fragmentation, and hence prolongation of removal proceedings." *AADC*, 525 U.S. at 487. So, for instance, revoking "a deferred action program with associated benefits" is not the sort of action for which jurisdiction is precluded. *Regents*, 591 U.S. at 19.

With the general contours of these provisions set forth, the Court turns to the merits of the case. Plaintiff challenges his pre-removal order detention, but Plaintiff has already been ordered removed. ECF No. [21-9]. In light of this, any order from this Court on pre-removal procedures likely would have an effect on the legality of Plaintiff's removal order, even if Plaintiff's claims are not temporally or logically a consequence of the Government's decision to remove Plaintiff.

Here, the immigration judge denied Plaintiff's motion to terminate removal proceedings so that he could pursue adjustment of status under the CAA, finding that "there is nothing in the record to indicate that DHS intended to extend a grant of parole when it released Respondent on a monetary bond." ECF No. [21-7]. If the Court ultimately found in Plaintiff's favor, this reasoning and decision—integral to the removal process—would be called into question, as would the resulting removal order.

In addition, and more concerning, if the Court ultimately concludes that Plaintiff should have been detained under § 1225(b), the logical next step is that Defendants would—either literally or as a legal fiction—take Plaintiff back into custody and assess the appropriateness of parole. But Plaintiff has a final order of removal, so the statutory framework of § 1225(b) does not apply and is unavailable to him. The only practical path forward based on such a ruling would be to invalidate the removal order such that Plaintiff remains theoretically "eligible" for § 1225(b) detention and parole assessment. That is, a declaration from the Court that Plaintiff should have been detained under § 1225(b) means nothing—and therefore runs into "case" and "controversy" concerns—if Defendants cannot then take action based on the declaration, but Defendants cannot act based on the declaration unless the removal order is invalidated or ignored.

In effect, Plaintiff's claims, though not directly attacking the Government's right to remove him or the removal order, would *collaterally* bear on whether the Government's removal order is

valid. Thus, the question before the Court is whether any or all of the jurisdiction-stripping provisions cited by Defendants—8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g)—bar claims that collaterally impact extant removal orders.

**i. Title 8 U.S.C. § 1252(a)(5)**

The Court begins with § 1252(a)(5), and is guided by the Eleventh Circuit's ruling in *Mata v. Secretary of Department of Homeland Security*, 426 F. App'x 698 (11th Cir. 2011). In *Mata*, the plaintiff brought claims for mandamus, Administrative Procedure Act, and declaratory relief, "seeking review of whether proper procedures were followed when his lawful permanent resident ('LPR') status was rescinded." *Id.* at 699. The Eleventh Circuit found that "APA, mandamus, and declaratory jurisdiction are precluded by the jurisdiction-stripping provisions of the [INA]," specifically § 1252. *Id.* It found that while the plaintiff "characterize[ed] his claim as a challenge not to his removal, but rather to the INS's rescission decision," "*in substance*," his complaint sought review of his order of removal. *Id.* at 700 (emphasis added). This is because if a court found in the plaintiff's favor on the issue of the recission of his LPR status, "the very essence of the BIA's decision in the prior case would be called into question." *Id.* In effect, attacks on pre-removal procedures that could have the effect of undermining the legality of a removal order are not properly brought in district court. As applied here, Plaintiff's Complaint, because it implicates the legality of a removal order, is not properly before this Court.

In *Delgado v. Quarantillo*, the plaintiff sought to "force an adjudication on the merits of an I–212 application." 643 F.3d 52, 55 (2d Cir. 2011). The Court found that § 1252(a)(5) precluded such an "indirect challenge" to a removal order. *Id.* Specifically, it found that the district court lacked jurisdiction because, even though a grant of the I–212 application would not "per se prevent her removal," "[o]btaining such a waiver is a necessary prerequisite to her ultimate goal of adjustment of status." *Id.* Here, too, ordering that Plaintiff's detention operated under a different

statute is a necessary prerequisite to his ultimate goal of adjustment of status, which implicates the validity of the extant removal order. As such, it may not be brought in district court.

Other circuits hold much the same. *See, e.g.*, *Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012) ("When a claim by an alien, however it is framed, challenges the procedure and substance of an agency determination that is 'inextricably linked' to the ultimate order of removal, district courts lack jurisdiction[.]"); *Estrada v. Holder*, 604 F.3d 402, 408 (7th Cir. 2010) ("If Cueto Estrada obtains the relief he seeks, the order of removal entered by the IJ and affirmed by the BIA—which rested on the conclusion that Cueto Estrada is no longer a lawful permanent resident—would necessarily be flawed. We have concluded that Cueto Estrada can obtain the relief sought in his complaint in the removal proceedings before the IJ and the BIA, and § 1252(a)(5) provides that the exclusive means for judicial review of removal proceedings shall be by petition for review."). Thus, § 1252(a)(5) precludes the Court's review here.

**ii. Title 8 U.S.C. § 1252(b)(9)**

Turning to the application of § 1252(b)(9), the Court is guided by three Supreme Court cases. In *Nasrallah v. Barr*, the Supreme Court explained that "rulings that affect the validity of the final order of removal merge into the final order of removal for purposes of judicial review." 590 U.S. 573, 582 (2020). That means that § 1252(b)(9) precludes district courts from reviewing "all matters on which the validity of the final order is contingent." *Id.* (citation omitted). Thus, a matter is properly subject to a district court's review only where it "does not disturb the final order of removal" and does not "affect the validity of the final order of removal." *Id.*

Similarly, in *Johnson v. Guzman Chavez*, the Supreme Court explained that where certain relief does not "affect[]" "the validity of removal orders" and "does not render non-final an otherwise 'administratively final' . . . order of removal," the claim is not merged into review of the final order of removal. 594 U.S. 523, 540 (2021). That is, if "the finality of the order of removal

does not depend in any way on the outcome of" the proceedings at issue, review of the proceedings need not merge with review of the final order of removal. *Id.* at 539.

Finally, in *Riley v. Bondi*, the Supreme Court held that where the challenged action "is not a final order of removal and does not affect the validity of a previously issued order of removal or render that order non-final," § 1252(b)(9) does not apply to preclude review. 606 U.S. at 269.

The implication of these cases is clear: if the relief sought by Plaintiff would undermine the validity of the removal order, his claims must be brought along with review of the removal order before a court of appeals. And because the Court has already explained the manner in which the relief sought here would impact the removal order in this case, the Court finds the application of § 1252(b)(9) inescapable.

**iii. Title 8 U.S.C. § 1252(g)**

Regarding § 1252(g), the Court does not find this provision applicable. As discussed above, § 1252(g) precludes review of three decisions—the decision to *commence* proceedings, *adjudicate* cases, or *execute* removal orders. And the Eleventh Circuit instructs that, "[w]hen asking if a claim is barred by § 1252(g), courts must focus on the action being challenged." *Canal A Media Holding, LLC v. United States Citizenship & Immigration Services*, 964 F.3d 1250, 1257–58 (11th Cir. 2020). Here, Plaintiff does not directly challenge any of those three actions.

First, the Notice to Appear is the "decision or action" to "commence proceedings" that § 1252(g) refers to, *Umesi v. U.S. Att'y Gen.*, 813 F. App'x 469, 470 (11th Cir. 2020), and Plaintiff does not challenge the decision to issue a Notice to Appear here. Second, the "adjudication" of cases refers to "the discretionary, quasi-prosecutorial decisions by asylum officers" or other immigration officials; that is, it is the *decision* to either abandon a removal effort or adjudicate it "that Congress wished to preserve from judicial review." *Barahona-Gomez v. Reno*, 236 F.3d 1115, 1120 (9th Cir. 2001). Plaintiff does not ask the Court to order immigration officials to make

a different decision on Plaintiff's removal. Third, Plaintiff does not ask the Court to stay, invalidate, or otherwise interfere with his removal order. That the relief sought by Plaintiff *may*—at some point—bear on the validity of the removal order does not mean that the execution of a removal order is "the action being challenged" here. *Canal A*, 964 F.3d at 1257–58. Fundamentally, § 1252(g) "was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *AADC*, 525 U.S. at 485 n.9. Plaintiff's Complaint—as constrained to the two areas of declaratory relief identified by the Court—does not challenge any discretionary decision at all. So § 1252(g) cannot be read to preclude judicial review here.

To crystallize the Court's ruling, the Court finds that § 1252(a)(5) precludes its jurisdiction. There is simply no way for the Court to provide Plaintiff with the relief he seeks without calling into question "the very essence of the BIA's decision." *Mata*, 426 F. App'x at 700. In addition, the Court finds that § 1252(b)(9) precludes its review, as the Court could not grant Plaintiff relief without "affect[ing] the validity of a previously issued order of removal or render that order non-final." *Riley*, 606 U.S. at 269. And the Court does not find that § 1252(g) precludes review, as Plaintiff does not directly challenge any of the "three discrete actions" covered by § 1252(g). *AADC*, 525 U.S. at 482. In effect, the Court finds that the existence of a removal order in this case has dispositive jurisdictional effects—it requires the case to be brought before the court of appeals along with a review of the final removal order.[3]

[3] The Court pauses to address one seemingly contrary case. In *Canal A Media Holding, LLC v. United States Citizenship & Immigration Services*, 964 F.3d 1250 (11th Cir. 2020), the plaintiff challenged USCIS's denial of a work visa. *Id.* at 1253. The district court granted the Government defendants' motion to dismiss, finding—in relevant part—that § 1252(b)(9) barred district court review of the denial because the claims were "inextricably linked to any ultimate removal order." *Id.* at 1254, 1257. The Eleventh Circuit reversed. It found that § 1252(b)(9) did not bar review, as that provision "is not intended to cut off claims that have a tangential relationship with pending removal proceedings," but only those claims that actually "challeng[e] removal proceedings." *Id.* at 1257 (cleaned up and internal citations and quotation marks removed). However, that case presented a different posture, as an order of removal had not yet been issued, so there was no removal order to invalidate. That is, the case could not have "involve[d] review of an order

Because the Court finds that it lacks subject matter jurisdiction, the Court does not reach Defendants' remaining bases for dismissal.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion**, ECF No. [21]** is **GRANTED**.
2. The Complaint, **ECF No. [1]**, is **DISMISSED WITHOUT PREJUDICE**.
3. The Clerk shall **CLOSE** the case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 16, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:

counsel of record

of removal," *id.* at 1257 (quoting *Madu v. U.S. Atty. Gen.*, 470 F.3d 1362, 1367 (11th Cir. 2006)), as no removal order existed yet.